UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DEBORAH A. HALL,                  )
                                  )  No. CV-06-0004-CI
            Plaintiff,            )
                                  )  ORDER GRANTING DEFENDANT'S
v.                                )  MOTION FOR SUMMARY JUDGMENT
                                  )
JO ANNE B. BARNHART,              )
Commissioner of Social            )
Security,                         )
                                  )
            Defendant.            )
                                  )

     BEFORE THE COURT are Plaintiff's Motion for Summary Judgment
(Ct. Rec. 14) and Defendant's Motion for Summary Judgment (Ct. Rec.
19), noted for hearing without oral argument on August 21, 2006.
(Ct. Rec. 13.) Attorney Lana C. Glenn represents Plaintiff; Special
Assistant United States Attorney Jeffrey H. Baird represents the
Commissioner of Social Security ("Commissioner"). The parties have
consented to proceed before a magistrate judge. (Ct. Rec. 9.) After
reviewing the administrative record and the briefs filed by the
parties, the court **GRANTS** Defendant's Motion for Summary Judgment
(Ct. Rec. 19) and **DENIES** Plaintiff's Motion for Summary Judgment.
(Ct. Rec. 14.)

                          **JURISDICTION**

     Plaintiff's applications for Supplemental Security Income and
Disability Insurance Benefits ("DIB") alleged an onset date of April
2, 2001. (Tr. 523-525, 87-89.) The applications were denied

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

initially (Tr. 46) and on reconsideration. (Tr. 47.) ALJ Mary Reed held a hearing on July 14, 2004. Plaintiff, medical expert Glen Almquist, M.D., vocational expert Deborah Lapoint, and Will Patterson, a friend of the Plaintiff, testified. (Tr. 536-633.) The ALJ issued a decision finding that Plaintiff was not disabled on December 17, 2004. (Tr. 22-37.) In her decision, the ALJ also made clear that she found no regulatory basis on which to reopen Plaintiff's previous denials of her three prior claims for disability benefits. (Tr. 22-23.) The Appeals Council denied a request for review on November 8, 2005. (Tr. 9-11). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on January 6, 2006. (Ct. Rec. 1.)

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 47 years old on the date of the ALJ's decision. (Tr. 23, 580.) Her educational background includes obtaining a GED and attending two years of college. (Tr. 580.) Plaintiff is a certified nursing assistant. (Tr. 580.) She has worked as a nursing assistant, home attendant, fast food worker, animal breeder, horse trainer and stable attendant. (Tr. 580-587.) Plaintiff alleges disability due to left knee and bilateral shoulder problems since April 2, 2001. (Tr. 207.)

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as

the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1.  If the
2  impairment meets or equals one of the listed impairments, Plaintiff
3  is conclusively presumed to be disabled.  If the impairment is not
4  one conclusively presumed to be disabling, the evaluation proceeds
5  to the fourth step, which determines whether the impairment prevents
6  Plaintiff from performing work which was performed in the past.  If
7  a Plaintiff is able to perform previous work, that Plaintiff is
8  deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv),
9  416.920(a)(4)(iv).  At this step, Plaintiff's residual functional
10 capacity ("RFC") assessment is considered.  If Plaintiff cannot
11 perform this work, the fifth and final step in the process
12 determines whether Plaintiff is able to perform other work in the
13 national economy in view of Plaintiff's residual functional
14 capacity, age, education and past work experience.  20 C.F.R. §§
15 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137
16 (1987).

17     The initial burden of proof rests upon Plaintiff to establish
18 a *prima facie* case of entitlement to disability benefits.  *Rhinehart*
19 *v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172
20 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once
21 Plaintiff establishes that a physical or mental impairment prevents
22 the performance of previous work.  The burden then shifts, at step
23 five, to the Commissioner to show that (1) Plaintiff can perform
24 other substantial gainful activity, and (2) a "significant number of
25 jobs exist in the national economy" which Plaintiff can perform.
26 *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

27                         **STANDARD OF REVIEW**
28     Congress has provided a limited scope of judicial review of a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1    Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold
2    the Commissioner's decision, made through an ALJ, when the
3    determination is not based on legal error and is supported by
4    substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th
5    Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
6    "The [Commissioner's] determination that a plaintiff is not disabled
7    will be upheld if the findings of fact are supported by substantial
8    evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)
9    (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a
10   mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th
11   Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*,
12   888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of
13   Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).
14   Substantial evidence "means such evidence as a reasonable mind might
15   accept as adequate to support a conclusion."  *Richardson v. Perales*,
16   402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences
17   and conclusions as the [Commissioner] may reasonably draw from the
18   evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289,
19   293 (9th Cir. 1965).  On review, the Court considers the record as
20   a whole, not just the evidence supporting the decision of the
21   Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)
22   (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

23       It is the role of the trier of fact, not this court, to resolve
24   conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence
25   supports more than one rational interpretation, the court may not
26   substitute its judgment for that of the Commissioner.  *Tackett*, 180
27   F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
28   Nevertheless, a decision supported by substantial evidence will

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

still be set aside if the proper legal standards were not applied in
weighing the evidence and making the decision. *Brawner v. Secretary
of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).
Thus, if there is substantial evidence to support the administrative
findings, or if there is conflicting evidence that will support a
finding of either disability or nondisability, the finding of the
Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-
1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity during any time at issue. (Tr. 23.)
At step two, the ALJ found that the medical evidence established
that Plaintiff suffered from the severe impairments of status post
bilateral shoulder repair and status post left knee repair. (Tr.
31.) The ALJ concluded the record did not establish that Plaintiff
suffered from a severe mental impairment, lupus, reflex sympathetic
dystrophy ("RSD"), asthma, a brachial plexus injury, arthritis of
the spine, or rheumatoid arthritis. (Tr. 31-32.) Though Plaintiff's
knee and shoulder impairments are considered severe, the ALJ
concluded that she does not have an impairment or combination of
impairments listed in or medically equal to one of the Listings
impairments. (Tr. 32, 37.)

After finding Plaintiff's testimony regarding her limitations
not fully credible, the ALJ concluded that Plaintiff has the RFC to
perform a full range of exertion except that she is limited to
reaching or working overhead occasionally. (Tr. 34.) At step four
the ALJ concluded that because Plaintiff has the RFC to perform all
of her past work as she previously performed it, she is not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

disabled. (Tr. 36.)  Given the ALJ's conclusion at step four, she was not required to proceed to step five; the ALJ elected to do so as an alternative finding. (Tr. 36.)  It is the Commissioner's burden at step five to show that there are jobs existing in significant numbers in the national economy which Plaintiff can perform, consistent with her medically determinable impairments, functional limitations, age and education. At step five, the ALJ asked the vocational expert whether a person having the hypothesized conditions that Plaintiff has could perform work in a sufficient number of available jobs in the local and national economy. The VE opined that the jobs of office helper, ticker seller, cashier, and assembler could be performed by a person with these limitations, and that a significant number of these jobs existed in the state and national economy.  Accordingly, the ALJ alternatively determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 36.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that (1) the ALJ erred by rejecting the opinions of her treating and examining physicians, and if properly credited, the ALJ would have found that Plaintiff's impairments meet the requirements of a Listed impairment; (2) the ALJ's residual functional capacity determination was not properly supported; and the ALJ posed a flawed hypothetical. (Ct. Rec. 15 at 39-50.)

The Commissioner opposes the Plaintiff's Motion and asks that the ALJ's decision be affirmed. (Ct. Rec. 20 at 14.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1                          **DISCUSSION**

2  **A.   Weighing Medical Evidence**

3       In social security proceedings, the claimant must prove the

4  existence of a physical or mental impairment by providing medical

5  evidence consisting of signs, symptoms, and laboratory findings; the

6  claimant's own statement of symptoms alone will not suffice. 20

7  C.F.R. § 416.908. The effects of all symptoms must be evaluated on

8  the basis of a medically determinable impairment which can be shown

9  to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical

10  evidence of an underlying impairment has been shown, medical

11  findings are not required to support the alleged severity of

12  symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

13       A treating or examining physician's opinion is given more

14  weight than that of a non-examining physician. *Benecke v. Barnhart*,

15  379 F. 3d 587, 592 (9th Cir. 2004).  If the treating or examining

16  physician's opinions are not contradicted, they can be rejected only

17  with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821,

18  830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion

19  if he states specific, legitimate reasons that are supported by

20  substantial evidence. *See Flaten v. Secretary of Health and Human*

21  *Serv.*, 44 F. 3d 1453, 1463 (9th Cir. 1995).  In addition to medical

22  reports in the record, the analysis and opinion of a non-examining

23  medical expert selected by an ALJ may be helpful to the

24  adjudication. *Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995)

25  (*citing Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1989)).

26  Testimony of a medical expert may serve as substantial evidence when

27  supported by other evidence in the record. *Id.*

28       Plaintiff contends that the ALJ erred by rejecting the opinions

of treating physicians Graeme French, M.D., and Alex Verhoogen, M.D., in favor of the unsupported opinion of the testifying medical expert, Glen Almquist. (Ct. Rec. 15 at 44-47.) The Commissioner responds that the ALJ properly rejected both doctors' opinions for specific and legitimate reasons, namely, that objective test results and examining physicians' opinions support Dr. Almquist's opinion. (Ct. Rec. 20 at 8-9.)

Plaintiff saw orthopedist Dr. Alex Verhoogen for knee problems on October 25, 2001. He suspected she had a torn meniscus and recommended arthroscopy. (Tr. 369, 372-373.) Arthroscopy proved Dr. Verhoogen's suspicion was incorrect; he used a thermal technique to shrink Plaintiff's lax anterior cruciate ligament and lysed a synovial plica in her knee instead.[1] Nearly three months later, on February 14, 2002, Dr. Verhoogen opined that Plaintiff was doing very well. Her knee was almost asymptomatic except for what she described as a feeling of residual weakness. (Tr. 378.) Dr. Michael Barnard noted at an IME three months later[2] that Plaintiff told him Dr. Verhoogen "put her on strict restrictions at work and that they are 'written down,'" but Dr. Barnard points out that he saw no restrictions in the documents he reviewed. (Tr. 359.) By April 9, 2002, Dr. Verhoogen opined that Plaintiff could work full time as either a cashier or a home attendant. (Tr. 380.) As of June 18, 2002, Dr. Verhoogen planned no further treatment. (Tr. 385.) He

---

[1]Dr. Verhoogen performed arthroscopic surgery and repair on November 21, 2001. (Tr. 374.)

[2]Dr. Barnard performed the evaluation on May 20, 2002. (Tr. 355-368.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

did not see Plaintiff again but opined on August 24, 2004, that she
was totally and permanently disabled from working full time, due not
only to knee and shoulder problems but because she also suffered
from lupus, emotional dysfunction, rheumatoid arthritis of the spine
and chronic low back pain. (Tr. 502-503.)

Plaintiff claims the ALJ also failed to properly credit Dr.
French's opinion. With respect to her shoulder problems, Dr. French
noted on March 13, 2002, that Plaintiff's use of crutches for eight
and a half months "really flared her right shoulder up." (Tr. 407.)
Dr. French felt that Plaintiff suffered a fairly severe brachial
plexus injury which completely resolved before she began using
crutches. (Tr. 407.) He diagnosed a right compression brachial
plexothapy and right cubital tunnel, recommended physical therapy,
and prescribed Dilantin and Neurontin. (Tr. 407.) Plaintiff later
told Dr. Barnard she did not take these medications because
insurance would not pay for it. (Tr. 360.) Right shoulder X-rays
taken the day of Dr. French's exam revealed a possible impingement
syndrome. (Tr. 421.)

A month later Dr. French diagnosed a Grade II anteromedial
rotary instability of the left knee, chronic, and instructed
Plaintiff in exercises. (Tr. 410.) He found full range of motion
with no laxity of crepitus in Plaintiff's shoulder joint. (Tr. 410.)
By this time, Dr. French believed that Plaintiff's nerve symptoms
"are entirely related to her shoulder instability event [a car
accident] of five years ago" and she "clearly has some residual
scarring around the brachial plexus, which caused her to have
brachial plexopathy when she was on the crutches." He felt that
Plaintiff's shoulder was recovering satisfactorily. (Tr. 410.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

Nine months later, however, Dr. French performed reconstructive surgery on Plaintiff's left shoulder.[3]  (Tr. 399.)  At that time, Plaintiff's knee was "completely stable." (Tr. 399.) Following shoulder surgery, Dr. French felt Plaintiff's prognosis was good and she would likely be partially disabled for six months. (Tr. 401.) A week after Dr. French operated on her shoulder, Plaintiff sought treatment at an emergency room for a rash and said that she had no real pain in her shoulder at the surgery site. (Tr. 403.)  Dr. French noted that six months after shoulder surgery Plaintiff shoveled sand in her yard and chased her grandson; he felt that when her knee completely healed she would have no restrictions. (Tr. 441.)

On February 27, 2004, Dr. French opined that Plaintiff's ability to sit was not impaired.  (Tr. 450.)  He noted that Plaintiff has asthma although there is no treatment documented, can stand or walk 6 hours out of 8, can frequently lift 20 pounds, has limited manipulative functions, and can never kneel, crouch, crawl or stoop. (Tr. 450-452.) On June 30, 2004, Dr. French opined that Plaintiff could occasionally lift or carry 10 pounds, and could lift less than 10 pounds frequently. (Tr. 463.) Later in the same assessment, Dr. French indicated that Plaintiff could lift 5 pounds (from "rarely" up to "one third of a work day") and 3 pounds (for durations ranging from "one third to two thirds of a work day"). (Tr. 467.) He opined Plaintiff could stand or walk less than 2 hours of eight due to systemic lupus. (Tr. 463, 467.) He again found

---

[3]Dr. French performed shoulder surgery on January 16, 2003. (Tr. 399-401.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Plaintiff's ability to sit was not affected, and again assessed limitations in all manipulative functions. (Tr. 464-465.)

The ALJ relied in part on the results of Dr. Barnard's IME[4] when she assessed the opinions of Drs. Verhoogen and French. Plaintiff told Dr. Barnard she was receiving no treatment for her shoulders and took no prescription medications, but was receiving ongoing physical therapy for her left knee due to "atrophy" and weakness. (Tr. 360.) Dr. Barnard observed no atrophy in the Plaintiff's left thigh. (Tr. 364.) When he examined her left knee, Dr. Barnard found limited range of motion until he distracted her; Plaintiff's left knee had full range of motion when her attention was distracted. (Tr. 364.) Dr. Barnard opined that Plaintiff had reached maximum medical improvement. "She has no evidence of atrophy in her lower extremities whatsoever, and it appears that her atrophy has resolved at this time, requiring no further intervention with physical therapy. No treatment is recommended at this time. The claimant is fully recovered from her knee injury." (Tr. 366.) With respect to Plaintiff's shoulder problems, Dr. Barnard disagreed with Dr. French's diagnosis because he found no evidence of brachial plexopathy or of thoracic outlet syndrome. (Tr. 366.) Dr. Barnard opined that Plaintiff was capable of returning to her full-time job as a nursing assistant. (Tr. 367.)

The ALJ also relied on the opinions of Meredith Heick, M.D., when she assessed the opinions of Drs. Verhoogen and French. Dr. Heick examined Plaintiff on June 21, 2004. (Tr. 476.) Plaintiff told

---

[4]Dr. Barnard performed his evaluation on May 20, 2002. (Tr. 355-367.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Dr. Heick she was diagnosed with lupus in the past, but it had been
in remission for ten years; she had not seen a rheumatologist during
that time. (Tr. 476.) Dr. Heick's examination revealed no sign of
active lupus but tests were ordered. (Tr. 479.) On June 30, 2004,
Dr. Heick advised Plaintiff that laboratory test results also showed
no active sign of lupus. (Tr. 485.)

The ALJ also relied on the testimony of Dr. Almquist when she
assessed the opinions of Drs. Verhoogen and French. Dr. Almquist
testified that the record does not reveal why Plaintiff needed
crutches for eight and a half months. (Tr. 558.)  He opined that
even a more severe injury, such as "a fracture of the plateau of the
tibias of the knee," would likely result in using crutches for only
three months until a patient would begin bearing weight. (Tr. 558-
559, 570.) Dr. Almquist observed that Plaintiff's reported diagnosis
of lupus was contradicted by a lack of medical treatment for it for
ten years, and by recent negative exam and test results. (Tr. 546,
551, 555.) With respect to credibility, he testified that doctors
noted some evidence of pain behavior during Plaintiff's evaluations
such as describing tenderness everywhere she was touched in her
shoulder area, despite normal sensory examination and full range of
motion. (Tr. 551-552.) When the ALJ asked whether any of the
impairments alone or in combination met the requirements of the
Listed impairments, Dr. Almquist opined that Plaintiff's left knee
problem presented the most severe impairment, but he did not believe
that it met the requirements of Listing 102A (degenerative
arthritis, deformity or instability of a weight bearing joint),
because, after surgery, the knee was stable and without problems.
(Tr. 556.) Dr. Almquist then considered Plaintiff's shoulder

impairment under Listing 102B (instability of an upper extremity) and found that the requirements were not met because after surgery, no shoulder instability was established. (Tr. 556.) Dr. Almquist observed that Plaintiff's knee and shoulder surgeries are of the type that normally allow a person to return to work within 3 to 4 months and to their highest activity level within one year. (Tr. 566.)

With respect to Plaintiff's assertion that her impairments meet or equal one of the Listings, the ALJ took into account Dr. Almquist's testimony that an MRI of Plaintiff's knee in September of 2002 was normal, doctors found no atrophy after Plaintiff recovered from using crutches, and examinations revealed no deformity of the weight bearing joints or instability. (Tr. 29.) The ALJ credited Dr. Almquist's observation that in July of 2003, examination revealed that Plaintiff's left knee was perfect and she had full range of motion in her left shoulder. (Tr. 29, relying on Tr. 554, 444.) The ALJ accepted Dr. Almquist's conclusion that Plaintiff is capable of fully using her shoulder and is limited only to the extent that if she works above shoulder height it must be limited to occasionally. (Tr. 29.)

The ALJ pointed out that in March of 2002, Plaintiff lifted 47 pounds from floor to waist and 30 pounds to her chest in physical therapy. (Tr. 35.) The ALJ continued:

Dr. Barnard opined she had fully recovered from her knee injury and was capable of returning to her job as a nursing assistant (a medium exertion job) on a full time basis. A reported re-injury occurred during an independent medical exam with Dr. Barnard, however, Dr. Verhoogen reported this should be temporary. Brachial plexus examination was normal, MRI of the right knee was within normal limits, and range of motion of the right shoulder was normal post operatively. Left shoulder revealed no

1    swelling or tenderness on examination by Dr. Heick,
2    although the claimant reported pain on motion.

3  (Tr. 35.)

4        The ALJ gave at a minimum three specific reasons for rejecting
5  Dr. Verhoogen's August 2004 opinion that Plaintiff could not work:
6  (1) Dr. Verhoogen based his opinion of disability partly on the
7  assumption that Plaintiff suffered from lupus, an assumption not
8  supported by the record; (2) Dr. Verhoogen last saw Plaintiff in
9  June of 2002, when he released her to work; yet neither the
10 intervening record nor Dr. Verhoogen's 2004 opinion reveal what
11 changed his opinion that Plaintiff could perform light work in 2002
12 but not in 2004; and (3) in 2004 Dr. Verhoogen opined that emotional
13 problems probably impacted Plaintiff's ability to return to work,
14 although none of his previous chart notes reflected mental or
15 emotional difficulties. (Tr. 35, 503.)

16       The ALJ rejected Dr. Verhoogen's last opinion because it was
17 inconsistent with other physicians' opinions (such as Drs. Heick,
18 Barnard, and Dr. Almquist); was inconsistent with his earlier
19 opinion that Plaintiff could perform some light jobs, and he did not
20 explain the change; and, with respect to mental impairments, was
21 inconsistent with Dr. Verhoogen's own earlier chart notes and with
22 the records of other physicians because prior records did not
23 document mental impairments. Each is a specific and legitimate
24 reason for the ALJ's rejection of Dr. Verhoogen's opinion that
25 Plaintiff could not work.  When presented with conflicting medical
26 opinions, the ALJ must determine credibility and resolve the
27 conflict. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).
28       The ALJ similarly discounted Dr. French's opinion Plaintiff was

limited to sedentary work because he based this opinion on the
mistaken belief that Plaintiff suffered from lupus and a brachial
plexus injury, both unsupported by the record. (Tr. 35.) The ALJ
notes that even Dr. French eventually opined that Plaintiff did not
suffer a brachial plexus injury. (Tr. 31.) The opinions of treating
physicians French and Verhoogen are further contradicted by
examining physicians Barnard, Heick and Charles Larson, M.D., by the
results of objective testing, and by Dr. Almquist.  The ALJ gave
specific and legitimate reasons for rejecting the severe limitations
assessed by Plaintiff's treating physicians.  The ALJ's weighing of
the medical evidence is supported by substantial evidence in the
record as a whole and is free of legal error.

**B.    Residual Functional Capacity (RFC)**

In this case, the ALJ pointed out the factors she was required
to consider when determining Plaintiff's RFC:

> [When determining a claimant's residual functional
> capacity,] the undersigned must consider all symptoms,
> including pain, and the extent to which these symptoms can
> reasonably be accepted as consistent with the objective
> medical evidence and other evidence based on the
> requirements of 20 C.F.R. §§ 404.1529 and 416.929, and on
> Social Security Ruling 96-7p.  In cases such as this,
> where the objective medical evidence alone fails to
> substantiate subjective allegations of total incapacity to
> work, 20 C.F.R. §§ 404.1529 and 416.929 emphasize the need
> to go further and consider other relevant information
> bearing on the issue of credibility. Included among other
> factors to be considered are the claimant's subjective
> complaints regarding the nature, onset, duration,
> frequency, radiation and intensity of any pain,
> precipitation and aggravating factors; type, dosage,
> effectiveness and adverse side effects of any pain
> medication; treatment other than medication for relief of
> pain; functional restrictions and daily activities.

(Tr. 32.)

Plaintiff disputes the ALJ's determination that she retains the
residual functional capacity to perform work at all exertional

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

levels, as long as the work requires reaching or work overhead no
more than occasionally. (Ct. Rec. 15 at 39-50.)  The Commissioner
responds that the RFC determination is supported by the medical
evidence and by the ALJ's determination that Plaintiff is less than
completely credible. (Ct. Rec. 20 at 5-7, 10-12.)

Plaintiff's argument with respect to the RFC is the same as her
first argument: she disagrees with the way the ALJ weighed the
medical testimony. Plaintiff does not challenge the ALJ's
determination that she lacked credibility.  Credibility
determinations bear on the evaluation of medical evidence when an
ALJ is presented with conflicting medical opinions. *Webb v.
Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).  In this case the ALJ
found that Plaintiff takes Tylenol, ibuprofen, PM medicines and
herbal remedies for pain, but no prescription medication. (Tr. 33.)
Plaintiff testified that her self esteem is low because she lost her
job, cannot work, and lost her assets, but she has never been
prescribed antidepressants or told to attend counseling. (Tr. 33.)
Plaintiff testified that she had "swelling in her hands and feet her
whole life, yet this is not supported in the record as examination
by Dr. Heick indicated no swelling and other exams do not mention
swelling of joints." (Tr. 34.) Plaintiff testified to numbness in
her right arm and hand, lasting 20-30 minutes, particularly with
activity such as lifting 10 pounds, "yet examinations at C33F[5]

---

[5]C33F is the record from Holy Family Hospital Emergency Center
noting strong hand grip and "equal feeling and movement of the
fingers," and a negative left shoulder x-ray, dated September 27,
2002.  (Tr. 511-513.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

indicate she had good hand grip and good sensation in her hands."
(Tr. 34.) With respect to activities, the ALJ notes that Plaintiff
prepares food, grocery shops, drives a manual vehicle, plays games
on the internet 2 hours a day, and reads for 2-3 hours a day. (Tr.
34.)   The ALJ observed that Plaintiff shoveled sand on July 11,
2003. (Tr. 34, citing to Tr. 444.)

When the ALJ weighed the opinions of Dr. French and Dr.
Verhoogen, she properly considered that some of their assessments
were based in part on Plaintiff's inconsistent self-reporting.  As
noted, Plaintiff does not challenge the ALJ's credibility
determination.   The court finds that the ALJ appropriately
considered the medical evidence, as well as Plaintiff's credibility
in determining her residual functional capacity.  With respect to
the ALJ's residual functional capacity assessment, the ALJ's reasons
for the limitations assessed are fully supported by the medical
evidence, objective test results, and by her credibility
determination.   The ALJ's assessed RFC is supported by the record
and free of legal error.

**C.    Vocational Expert**

Plaintiff contends that the ALJ's hypothetical question to the
vocational expert was flawed because it did not contain all of her
medically supported limitations. (Ct. Rec. 15 at 47-49).   The
Commissioner responds that the ALJ included all of the impairments
established by the medical evidence. (Ct. Rec. 20 at 5-7).

Plaintiff's argument is the same as that previously raised,
that the ALJ did not weigh the medical evidence in the way she would
have wished. For the reasons articulated above, the court finds that
the ALJ's hypothetical, given as part of her alternative step five

analysis, included all of the limitations established by the medical and other competent evidence of record.

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the undersigned finds that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 14**) is **DENIED.**

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 19**) is **GRANTED.**

3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

DATED January 23, 2007.


           S/ CYNTHIA IMBROGNO
          UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 19